UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SHYANET DCUNHA,

       Plaintiff,

v.                        Case No: 2:13-cv-867-FtM-29MRM

CIRCLE K STORES, INC.,

       Defendant.

_____

**<u>OPINION AND ORDER</u>**

This matter comes before the Court on the Defendant's Motion for Summary Judgment (Doc. #55) filed on June 16, 2015. Plaintiff filed a Response (Doc. #66) on July 23, 2015. For the reasons set forth below, the motion is granted in part and denied in part.

**I.**

Plaintiff Shyanet Dcunha (Dcunha) has filed a six-count Second Amended Complaint (Doc. #58) against Defendant Circle K Stores, Inc. (Circle K) alleging that Circle K discriminated against him on account of his race, subjected him to a hostile work environment, and retaliated against him for complaining about the discrimination and hostility. The relevant undisputed facts are as follows:

In 2010, Dcunha, who is of Indian descent, began working for Circle K as a manager at a Circle K store located in Naples, Florida. (Doc. #55, p. 4; Doc. #66, pp. 2-3.) Circle K store

managers report directly to a Market Manager. (Id.) From 2010 until July 2012, Roger Williams served as Dcunha's Market Manager. (Id.) In September 2012, Linda Conforth (Conforth) replaced Williams as Dcunha's Market Manager. (Id.) Patti Branning (Branning) served as an acting Market Manager during the roughly two-month interim between Williams and Conforth. (Id.) Market Managers are directly supervised by a Regional Operations Director. Robert McNab (McNab) served as Dcunha's Regional Operations Director until December 10, 2012 when he was replaced by Lisa Baker (Baker). (Id.)

In October 2012, Dcunha sent an email to Circle K's Director of Human Resources Christie O'Halloran (O'Halloran) in which he complained that he had heard Branning refer to him using a racial slur and that he and other store managers were being treated hostilely and unfairly. (Doc. #66-2.) The following day, Dcunha sent a follow-up email to O'Halloran in which he specified that Branning had referred to him as "dot head." (Doc. #66-3.) Branning denied using the slur and Circle K ultimately concluded that it could not substantiate Dcunha's claim. (Doc. #55, pp. 5-6; Doc. #66, pp. 6-7.) As a result, Circle K took no further action regarding Dcunha's complaints. (Id.)

On April 2, 2013, Conforth visited Dcunha's store to deliver a list of issues for Dcunha to address to keep his store in compliance with Circle K policies. (Doc. #55, pp. 6-7; Doc. #66,

pp. 10-11.)   While at Dcunha's store, Conforth told a Circle K employee that she would have to put her "foot up [Dcunha's] ass" in order to remedy the issues.   (Id.)   Conforth's comment was relayed to Dcunha by a third Circle K employee who overheard the conversation.   (Id.)   The following day, Dcunha contacted Conforth and Baker to request a meeting regarding Conforth's comment, certain concerns he had regarding the issues list, and what Dcunha perceived as continued discrimination.   (Id.)

Baker scheduled an April 5, 2015 meeting between herself, Conforth, and Dcunha.   When the parties arrived at Dcunha's store for the meeting, Dcunha was away at the bank.   (Id.)   While waiting for Dcunha to return, Baker came across the store's Labor Scheduler.   The Labor Scheduler is a record prepared by each store manager to determine the amount of staff needed to cover store operations.   (Id.)   Dcunha's Labor Scheduler did not reflect his store's actual staffing, as evidence by discrepancies between the Labor Scheduler and the store's handwritten work schedule.   (Id.) When questioned, Dcunha admitted that he had been "cloning" previous weeks' Labor Schedulers without making adjustments for the current week's staffing.   (Doc. #55, p. 8; Doc. #56-5, p. 126-27.)   Dcunha explained to Baker and Conforth that "cloning" was a common practice among store managers and that it did not impact the store's operations because the store's employees followed the hand-written schedule instead.   (Id.)   Following the meeting,

3

Circle K issued Dcunha a written Counselling Notice detailing the Labor Scheduler issue, and suspended Dcunha for three business days. (Doc. #66-13.)

On April 10, 2013, Baker received a report indicating that Dcunha's store reported a cash variance on April 3, 2013. (Doc. #55, pp. 8-9; Doc. #66, pp. 13-15.) That same day, Baker emailed O'Halloran to ask if Dcunha's conduct thus far warranted termination. (Doc. #66-24.) Attached to Baker's email were the Counseling Notice provided to Dcunha regarding the Labor Scheduler and an Action Plan listing "on-going issues" with Dcunha's store. (Doc. #67-2, pp. 67-69.) O'Halloran responded that she would not terminate Dcunha on the basis of those documents, and inquired whether Dcunha had received other Counselling Notices. (Doc. #66-24.) Baker responded that there were only two Counselling Notices in Dcunha's file and that she would watch the store's surveillance footage "today" because she had "a feeling violations are occurring." (Id.) Baker reviewed the store's surveillance video and observed Dcunha preparing a cash deposit and placing the deposit bag in the drop chute for the store's safe. (Doc. #55, pp. 8-9; Doc. #66, pp. 13-15.) The deposit bag did not slide down the chute and enter the safe, but instead remained in the chute for approximately four hours before Dcunha took it to the bank. (Doc. #55, pp. 8-9; Doc. 56-5, pp. 152-53.) In relevant part, Circle K's cash handling policy states that "[i]f it is not

4

possible to go to the bank immediately after preparing the deposit, the deposit is to be locked in the safe." (Doc. #66-26.) Baker concluded that Dcunha's actions violated Circle K's cash handling policy, and terminated him. (Doc. #66-21.)

Dcunha argues that he was not terminated for violating the cash handling policy as Circle K contends. According to Dcunha, he was terminated as a result of intentional racial discrimination and/or in retaliation for his complaints to Circle K management. Based on these allegations, Dcunha brings causes of action against Circle K for discrimination on the basis of race in violation of 42 U.S.C. § 1981 (Section 1981) and the Florida Civil Rights Act (FCRA) (Counts II and V); for retaliation on the basis of race in violation of Section 1981 and the FCRA (Counts III and VI); and for creating and permitting a hostile work environment in violation of Section 1981 and the FCRA (Counts I and IV). Circle K now moves for summary judgment on each count.

**II.**

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Baby Buddies, Inc. v. Toys "R" Us, Inc., 611 F.3d 1308, 1314 (11th Cir. 2010). A fact is "material"

if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "A court must decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Anderson, 477 U.S. at 251).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the non-moving party. Scott v. Harris, 550 U.S. 372, 380 (2007); Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010). However, "if reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." St. Charles Foods, Inc. v. America's Favorite Chicken Co., 198 F.3d 815, 819 (11th Cir. 1999) (quoting Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296 (11th Cir. 1983) (finding summary judgment "may be inappropriate even where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts")). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1315 (11th Cir. 2007).

6

### III.

**A.   Dcunha's Discrimination Claims – Counts II and V**

Discrimination claims, whether brought under Title VII, Section 1981, or the FCRA, are subject to the same standards of proof and employ the same analytical framework. <u>Bryant v. Jones</u>, 575 F.3d 1281 (11th Cir. 2009) (Title VII and Section 1981 claims employ identical analyses); <u>Albra v. Advan, Inc.</u>, 490 F.3d 826, 834 (11th Cir. 2007) (FCRA is construed in accordance with Title VII).   To establish a prima facie case of discrimination based upon disparate treatment, a plaintiff must show that: "(1) he is a member of a protected class; (2) he was subjected to adverse employment action; (3) his employer treated similarly situated employees outside of his class more favorably; and (4) he was qualified to do the job." <u>Hall v. Dekalb County</u>, 503 F. App'x 781, 787 (11th Cir. 2013).

**1.   <u>Dcunha's Prima Facie Case</u>**

**a.   *Membership In a Protected Class***

Dcunha is Indian-American, and therefore indisputably a member of a protected class. <u>See</u> <u>Donaire v. NME Hosp.</u>, 27 F.3d 507, 509 (11th Cir. 1994) ("section 1981 redresses intentional discrimination because of Indian ancestry") (citing <u>Malhotra v. Cotter & Co.</u>, 885 F.2d 1305, 1308 (7th Cir. 1989)).   Accordingly, this element of the prima facie case is satisfied.

### b.   *An Adverse Employment Action*

It is undisputed that Circle K terminated Dcunha, which qualifies as an adverse employment action. Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1261 (11th Cir. 2001).  It is also undisputed that Circle K suspended Dcunha without pay prior to his termination, which also qualifies as an adverse employment action. Filius v. Potter, 176 F. App'x 8, 11 (11th Cir. 2006). Accordingly, this element of the prima facie case is satisfied.

### c.   *A Similarly-Situated Individual Treated Differently*

This element of the prima facie case requires Dcunha to identify a similarly-situated employee not within his protected class who did not suffer the same negative employment action as he did.  "To be an adequate comparator, the preferentially treated individual from outside plaintiff's protected class must be similarly situated to the plaintiff in all relevant respects. If this is not the case, the different application of workplace rules does not constitute illegal discrimination." Brown v. Sch. Bd., 459 F. App'x 817, 819 (11th Cir. 2012) (citation omitted).  "The comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer." Wilson v. B/E Aero., Inc., 376 F.3d 1079, 1091 (11th Cir. 2004).

As his termination comparators, Dcunha identifies three store managers who are not members of his protected class and who were

not terminated despite the fact that they also violated Circle K's cash handling policy.  Of those three, the most similar is Lynn Abbott (Abbott).  Abbot is currently a store manager within Dcunha's market and, like Dcunha, was a store manager at the time of her policy violation.  (Doc. #67-1, pp. 51-55.)  Like Dcunha, Abbott prepared a cash deposit but failed to lock it in the store's safe before she took it to the bank.  (Id.)  Specifically, a market manager observed Abbott keeping a deposit envelope in her pocket instead of securing it in the safe as required.  (Id.)  As with Dcunha, Abbott's deposit was subsequently delivered to the bank and no cash was lost.  (Id.)  Abbott was not terminated as a result, but instead received a written reprimand, was suspended, and was transferred to a different store.  (Id.)  Construing these facts in the light most favorable to Dcunha, the Court concludes that Abbott and Dcunha are similarly-situated in all relevant respects and, therefore, Abbott serves as an adequate comparator for Dcunha's claim of racial discrimination.

To be clear, Circle K identifies other store managers who *were* terminated for violating cash handling procedures.  (Doc. #55, pp. 13-14.)  While those employment decisions are relevant to the issue of pretext, they are irrelevant for the purposes of evaluating Dcunha's prima facie case.  There is no requirement that Dcunha distinguish each of Circle K's alleged comparators, nor is Dcunha required to identify a greater number of comparators

than Circle K.  For the purposes of establishing a prima facie case, Dcunha must only identify a similarly-situated individual outside of his protected class who committed the same misconduct and was penalized less harshly.  As explained above, Abbott meets those requirements and, accordingly, this element of Dcunha's prima facie case is satisfied for the purposes of Dcunha's claim that his _termination_ was the result of racial discrimination.

Dcunha does not identify any comparators for his claim that his suspension for failing to properly utilize the Labor Scheduler was a result of racial discrimination.  Nevertheless, Dcunha can avoid summary judgment on this facet of his discrimination claim if he "presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker."  Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1328 (11th Cir. 2011) (quotation omitted).  However, the record here does not support such an inference.  The Counseling Notice detailing Dcunha's suspension states that it was "completed by" Conforth and "approved by" Baker.  (Doc. #66-13.)  Dcunha has presented no evidence that Conforth was racially-biased and his only evidence concerning Baker's alleged racial bias is an isolated remark regarding individuals of Haitian descent.  (Doc. #67-3, pp. 35-40.)  However, isolated remarks unrelated to the employment decision at issue are insufficient to establish discrimination.  Ritchie v. Indus. Steel, 426 F. App'x 867, 872-73 (11th Cir. 2011).

Accordingly, Circle K is entitled to summary judgment as to Dcunha's claim that his suspension was the result of intentional discrimination.

### d. A *Qualified Individual*

To satisfy the final element of his prima facie case, Dcunha must show that he satisfied Circle K's objective qualifications for employment as a store manager.  <u>Vessels v. Atlanta Indep. Sch. Sys.</u>, 408 F.3d 763, 769 (11th Cir. 2005).  Objective qualifications are those that may be established by "evidence that is objectively verifiable and either easily obtainable or within the plaintiff's possession."  <u>Id.</u>  "Thus, subjective evaluations play no part in the plaintiff's prima facie case.  Rather, they are properly articulated as part of the employer's burden to produce a legitimate race-neutral basis for its decision, then subsequently evaluated as part of the court's pretext inquiry."  <u>Id.</u>

Dcunha alleges that he was qualified for the job of store manager, and Circle K employed him as a store manager for nearly three years.  Circle K does not dispute that Dcunha was qualified at the time he was hired, nor does it contend that there was a change in the requisite qualifications after he was hired.  Therefore, Dcunha has satisfied this element of his prima facie case.  Accordingly, Dcunha has established a prima facie case of

discrimination, and the burden shifts to Circle K to provide a non-discriminatory reason for Dcunha's termination.

## 2. **Circle K's Non-Discriminatory Reason for Dcunha's Termination, and Dcunha's Allegations of Pretext**

As explained above, Dcunha can establish a prima facie case of discrimination. Nevertheless, Circle K may be entitled to summary judgment if it "articulate[s] a legitimate reason for the action it took against the employee. Once such a reason is articulated, the employee must show that the employer's proffered reason for the adverse action is pretextual." Bailey v. City of Daytona Beach Shores, 560 F. App'x 867, 871 (11th Cir. 2014) (quotations and citations omitted). "To satisfy this intermediate burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had *not* been motivated by discriminatory animus." Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997) (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 257 (1981)).

Here, Dcunha's termination notice states that he was fired for violating Circle K's cash handling policy by failing to secure a cash deposit in the store's safe. (Doc. #66-21.) As explained above, Dcunha placed the deposit in the safe's chute, but the deposit did not slide down the chute and into the safe. (Doc. #55, pp. 8-9; Doc. 56-5, pp. 152-53.) According to Dcunha, he was

trained that it was sufficient to place the deposit in the chute and, therefore, he did not actually violate the cash handling policy. (Doc. #66, p. 14.) However, the cash handling policy makes no mention of placing a deposit in the safe's chute. Instead, it requires the deposit "to be locked in the safe." (Doc. #66-26.) Thus, a jury could reasonably conclude that Dcunha violated Circle K's cash handling policy. Circle K further contends that a violation of the cash handling policy constitutes a legitimate basis for termination. In support, Circle K points to three other store managers outside of Dcunha's protected class who were also terminated for violating the cash handling policy. (Doc. #55, pp. 13-14.). Based upon this evidence, a jury could reasonably conclude that Circle K's decision to terminate Dcunha was not motivated by discriminatory animus. Accordingly, the burden shifts back to Dcunha, who must show that Circle K's proffered reason for his termination is pretextual.

"A defendant who puts forward only reasons that are subject to reasonable disbelief in light of the evidence faces having its true motive determined by a jury." Combs, 106 F.3d at 1537. Thus, "evidence sufficient to discredit a defendant's proffered nondiscriminatory reasons for its actions, taken together with the plaintiff's prima facie case, is sufficient to support (but not require) a finding of discrimination." Id. at 1535. A plaintiff can demonstrate pretext "by identifying such weaknesses,

implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." Ritchie, 426 F. App'x at 872 (quoting Combs, 106 F.3d at 1538). A plaintiff can also demonstrate pretext "by showing that the decision maker made discriminatory remarks" as "[s]uch remarks are evidence of pretext because they shed light on the decision maker's state of mind at the time that he made the challenged employment decision." Id. at 872-73. However, "stray remarks that are isolated and unrelated to the challenged employment decision are insufficient to establish pretext." Id. at 873 (quotation omitted). Finally, when analyzing a claim of pretext, the Court must keep in mind that "[c]onclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where an employer has offered extensive evidence of legitimate, non-discriminatory reasons for its actions." Mayfield v. Patterson Pump Co., 101 F.3d 1371, 1376 (11th Cir. 1996) (quoting Isenbergh v. Knight-Ridder Newspaper Sales, 97 F.3d 436, 443-44 (11th Cir. 1996)).

Dcunha's termination notice lists the cash handling policy violation as the sole reason for his termination, and Baker repeatedly testified that Dcunha was terminated solely on that basis. (Doc. #66-21; Doc. #67-2, pp. 41, 64, 131-32, 146.) Dcunha

contends that there is sufficient evidence in the record for a jury to conclude that Circle K's proffered reason is pretextual. The Court agrees.

First, Circle K does not terminate every manager who violates the cash handling policy. As discussed above, Abbott was suspended and transferred following a cash handling policy violation very similar to Dcunha's. (Doc. #67-1, pp. 51-55.) This suggests that some additional subjective analysis is performed by Circle K to determine whether or not a particular violation warrants termination. In the case of Dcunha's violation, a jury could choose to credit his testimony that Circle K considered placing a deposit in the safe's chute to be equivalent to placing the deposit in the safe. (Doc. #56-5, p. 154.) Accordingly, a jury could reasonably conclude that Dcunha's violation of the cash handling policy was relatively trivial or, indeed, not actually a violation of the policy at all.

Second, while Circle K has identified three other store managers who were terminated for violating the cash handling policy, a jury could reasonable conclude that their misconduct was more egregious than Dcunha's. For example, one of those store managers had committed two separate violations of the cash handling policy before he was terminated, while Dcunha was terminated for his first violation. (Doc. #56-1, p. 15.) Similarly, another store manager was terminated after her violation resulted in a

$1,432 cash loss, while no cash was lost as a result of Dcunha's policy violation.  (Doc. #66-27.)  Thus, a jury could reasonably conclude that Circle K does not typically punish first-time policy violations with termination unless the violation resulted in a cash loss.  As a result, Dcunha's termination appears to be inconsistent with Circle K's typical practice.

Third, Baker's email correspondence on the day she discovered the cash handling policy violation suggests that she had decided to terminate Dcunha *before* she discovered his misconduct.  Baker testified that she discovered the policy violation while watching a recording of the store's surveillance camera.  (Doc. #67-2, p. 80.)  However, the record suggests that Baker decided to watch the surveillance footage only *after* emailing O'Halloran to ask if she had sufficient grounds to terminate Dcunha.  (Doc. #66-24.)  When O'Halloran responded in the negative, Baker replied that she was going to watching surveillance footage because she had a "feeling" that Dcunha was violating unspecified company policies.  (Id.)

Based upon this evidence, a jury could reasonably conclude (1) that Dcunha's violation of the cash handling policy was relatively trivial or not actually a violation of the policy at all; (2) that Dcunha's punishment was inconsistent with Circle K's general disciplinary practices; and (3) that the policy violation was merely Baker's justification for her pre-determined decision to terminate Dcunha.  Accordingly, a jury could reasonably conclude

16

that the cash handling policy violation was not the true reason for Dcunha's termination.  As explained by the Eleventh Circuit in Combs, this precludes an entry of summary judgment in favor of Circle K.  106 F.3d at 1535 ("evidence sufficient to discredit a defendant's proffered nondiscriminatory reasons for its actions, taken together with the plaintiff's prima facie case, is sufficient to support (but not require) a finding of discrimination.") Accordingly, Circle K's motion for summary judgment is denied as to Dcunha's claims that his termination was the result of racial discrimination.

**B.  Dcunha's Retaliation Claims – Counts III and VI**

In addition to prohibiting employment discrimination in and of itself, Title VII, Section 1981 and the FCRA also prohibit retaliation against an employee who opposes unlawful employment discrimination or otherwise assists an investigation into unlawful employment discrimination.  Goldsmith v. Bagby Elevator Co., 513 F.3d 1261, 1277 (11th Cir. 2008).  "To establish a claim of retaliation under Title VII or section 1981, a plaintiff must prove that he engaged in statutorily protected activity, he suffered a materially adverse action, and there was some causal relation between the two events." Id.  "Then, the burden of production shifts to the defendant to articulate a legitimate, non-retaliatory reason for its employment action, which the plaintiff

can rebut with evidence of pretext." Clark v. S. Broward Hosp. Dist., 601 F. App'x 886, 896 (11th Cir. 2015).

Circle K challenges only the third element of Dcunha's prima facie case, arguing that there is no causal connection between his complaints and his termination. "To demonstrate a causal connection between a protected activity and an adverse employment action, the plaintiff must show that: (1) the decisionmakers knew of his protected activity; and (2) the protected activity and adverse action were not wholly unrelated." Harris v. Florida Agency for Health Care Admin., No. 14-12951, 2015 WL 2344066, at *2 (11th Cir. May 18, 2015). "In most cases, a close temporal proximity between the protected conduct and the adverse action creates a genuine issue of material fact about the causal connection between the two." Id. However, absent additional evidence of causation, a three-month gap between the protected conduct and adverse employment action is insufficient. Id.

Here, Dcunha alleges that he complained of discriminatory treatment on three separate occasions: (1) in October 2012 concerning Circle K's "discriminatory actions, including denial of the pay raise, and the prejudicial, hostile and racially discriminatory work environment," including Branning's use of a racial slur; (2) in January, February, and March 2013 concerning the fact that Circle K "had taken no action" regarding his previous complaints of discrimination; and (3) on April 3, 2013 concerning

18

continued racial discrimination and Conforth's comment that she that she would put her "foot up [Dcunha's] ass." (Doc. #58, ¶¶ 20-31; Doc. #56-5, pp. 49, 89, 103-04.) Dcunha's April 3, 2013 complaint was made via email and phone to Conforth, who emailed a summary of his complaint to Baker on April 7, 2013. (Doc. #66-19.) Dcunha was officially terminated on April 25, 2013 (Doc. #66-21), and Baker's email correspondence with O'Halloran suggests that Baker sought to fire Dcunha as early as April 10, 2013 (Doc. #66-24).

Given the close temporal proximity between Baker's knowledge of Dcunha's complaints and her decision to terminate him, the Court concludes that there is a genuine issue of material fact as to the causal connection between the two events. Therefore, for the purposes of Circle K's motion, Dcunha has established a prima facie case for his retaliation claims, and the burden shifts to Circle K to articulate a legitimate, nonretaliatory reason for terminating his employment. As detailed above in the analysis of Dcunha's discrimination claims, the Court concludes that there is sufficient evidence in the record for a jury to reasonably conclude that Circle K's proffered reason for Dcunha's termination was pretextual. Accordingly, Circle K's motion for summary judgment is denied as to Dcunha's retaliation causes of action.

**C.   Dcunha's Hostile Work Environment Claims – Counts I and IV**

Section 1981, Title VII, and the FCRA prohibit the creation of a hostile work environment.   Smith v. Naples Cmty. Hosp., Inc., 433 F. App'x 797, 799 (11th Cir. 2011); Bryant v. Jones, 575 F.3d 1281, 1296 (11th Cir. 2009).   To prevail on a hostile work environment claim, an employee must prove:

> (1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment was based on a protected characteristic of the employee, such as national origin; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability.

Bryant, 575 F.3d at 1296 (quoting Miller v. Kenworth of Dothan Inc., 277 F.3d 1269, 1275 (11th Cir. 2002)).   Here, Dcunha cannot prevail on his hostile work environment claim because the evidence in the record would not permit a jury to reasonably conclude that his harassment was sufficiently severe or pervasive.

"[T]o be actionable, the harassment must result in both an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceives to be abusive."   Bryant v. Jones, 575 F.3d 1281, 1297 (11th Cir. 2009) (quoting Miller, 277 F.3d at 1276).   Circle K does not contest Dcunha's assertion that he subjectively believed that he was

suffering abuse on account of his race.  Therefore, the Court will focus on the objective component of this element.  "While it is true that the objective element is not subject to mathematical precision, we can infer that an environment is 'hostile' or 'abusive' from the circumstantial facts viewed in their proper context." Bryant, 575 F.3d at 1297 (quoting Harris v. Forklift Sys., 510 U.S. 17, 22-22 (1993)).  "This requires that we look to factors such as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id.  "Simple teasing . . . offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Faragher v. City of Boca Raton, 118 S. Ct. 2275, 2283 (1998).

Applying these principles, the Eleventh Circuit has consistently held that a pattern of rude and insensitive remarks, and/or isolated instances of a more severe nature, are insufficient to establish a hostile work environment. Alhallaq v. Radha Soami Trading, LLC, 484 F. App'x 293, 295 (11th Cir. 2012) ("Title VII is not a 'general civility code' and does not make actionable ordinary workplace tribulations.") (quotation omitted).  For example, in Barrow v. Georgia Pacific Corp., the Eleventh Circuit held that the district court did not err in granting summary

judgment against a hostile work environment claim even though the plaintiffs' supervisors repeatedly referred to them using racial slurs and occasionally threatened them with racially-motivated physical violence.  144 F. App'x 54, 57 (11th Cir. 2005).  See also Alhallaq, 484 F. App'x at 296 (affirming dismissal of a Muslim employee's hostile work environment claim where employee alleged that employer referred to her as "dirty" and told her to "go to Hell" and "burn in Hell"); Harrington v. Disney Reg'l Entm't, Inc., 276 F. App'x 863, 876 (11th Cir. 2007) (affirming grant of summary judgment in favor of employer where African-American employee frequently overheard managers refer to her as "ghetto" and managers told other African-American employees that they looked like "monkeys"); Godoy v. Habersham Cnty., 211 F. App'x 850, 853-54 (11th Cir. 2006) (affirming grant of summary judgment in favor of employer where Brazilian employee was subject to racial slurs "almost every shift," received a "threatening phone call," and was told by his supervisor to "go back to his boat and sail to South American where he belongs").

As evidence of his alleged hostile work environment, Dcunha cites (1) Branning's use of the racial slur "dot head;" (2) Branning's use of profanity towards him; (3) Branning's habit of putting him down in front of others; (4) Circle K's failure to fully investigate Branning's use of the racial slur; (5) frequent store visits and unwarranted discipline by Conforth; and (6)

Conforth's comment that she would put her "foot up [Dcunha's] ass." (Doc. #66, pp. 22-23.)  Construing this evidence in the light most favorable to Dcunha, the Court concludes that it would not permit a jury to reasonably conclude that his harassment was sufficiently severe or pervasive to create a discriminatorily abusive working environment.  Branning's and Conforth's alleged comments, while unquestionably objectionable, were isolated in nature and, as in Harrington, were not made directly to Dcunha.  Likewise, Branning's alleged use of profanity towards Dcunha and her habit of "putting him down" in front of others is far less severe than the frequent racial slurs and occasional threats of violence found insufficient in Godoy and Barrow.  Accordingly, Circle K is entitled to summary judgment as to Dcunha's hostile work environment causes of action.

Accordingly, it is now

**ORDERED:**

1.    Defendant's Motion for Summary Judgment (Doc. #55) is **GRANTED IN PART AND DENIED IN PART.**

2.    Summary judgment is **GRANTED** in favor of Defendant Circle K Stores, Inc. as to Plaintiff's hostile work environment causes of action (Counts I and IV).

3.    Summary judgment is also **GRANTED** in favor of Defendant Circle K, Stores, Inc. as to the portion of Counts II and V in which Plaintiff alleges that his suspension for the Labor Scheduler violation was the result of unlawful discrimination.

4.   The motion is otherwise **DENIED**.

**DONE AND ORDERED** at Fort Myers, Florida, this   15th   day of September, 2015.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE


Copies: Counsel of record